UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RUTH FOWLER,

                    Plaintiff,

        - against -

SCORES HOLDING COMPANY, INC.,
ENTERTAINMENT MANAGE
SERVICES INC. and GO WEST
ENTERTAINMENT INC.,
                    Defendants.
-------------------------------------------------------X

1:08-CV-07796 (VM)

**AFFIRMATION IN SUPPORT**
**OF MOTION TO DISMISS**
**COMPLAINT OR,**
**ALTERNATIVELY, FOR**
**SUMMARY JUDGMENT**
**AGAINST PLAINTIFF**

        PERRY BURKETT, an attorney duly admitted to practice before the Courts of the State of

New York and before the United States District Court for the Southern District of New York, affirms

pursuant to all the penalties of perjury, as follows:

1.      That I am the attorney for the defendant SCORES HOLDING COMPANY, INC. (hereinafter

      "SCORES HOLDING").

2.      That I have familiarity with the facts and circumstances in the above case due to the fact that

      I have been involved in all the pleadings heretofore filed before the Court, that I have had an

      opportunity to interview officers of defendant SCORES HOLDING and also of "GO WEST"

      ENTERTAINMENT INC. (hereinafter "GO WEST"), the company which operated the adult

      entertainment facility, at times referred to as "SCORES WEST", located at 533-535 West

      27th Street, New York, New York which owned and operated said facility during the period

      while the plaintiff herein performed there as a dancer, and I have reviewed various copies of

      documents supplied to be by both SCORES HOLDING and "GO WEST", including, among

      others, certain licensing agreements and an agreement entered into by and between "GO

      WEST" and the plaintiff herein, which agreement was typed "Entertainer Independent

Contractor Agreement". Furthermore, I have had the opportunity to review the deposition testimony of the plaintiff and the responses of the plaintiff to the notice to produce and the interrogatories served upon the defendant by defendant SCORES HOLDING.

3.   That I make this affirmation in support of defendant's motion seeking an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing the complaint herein for failure to state a claim on which relief may be granted; or, in the alternative, granting summary judgment against the plaintiff based on the fact that there exists no genuine issue as to any material fact so far as co-defendant SCORES HOLDING is concerned. Furthermore, dismissing the complaint herein on the basis of the fact that based upon the evidence adduced by the plaintiff's responses to discovery requests and testimony, there is no documentation or support to show that the possible damages based on evidence adduced by the plaintiff will exceed the jurisdictional sum of $75,000.00, exclusive of interest and costs as required under 28 U.S.C. Section 1332(a)(1) and thus there has never been proper jurisdiction for this action as alleged in the complaint of the plaintiff herein.

4.   That the defendant SCORES HOLDING is a corporation which owns the "SCORES Trademarks" name and certain intellectual property.  As further set forth in the accompanying affidavits of Elliot Osher, Curtis Smith, the former chief financial officer of SCORES HOLDING, and Howard Rosenbluth, the present chief financial officer of SCORES HOLDING. The only connection between SCORES HOLDING and the nightclub where the plaintiff performed as a dancer during the period while she was performing there was that SCORES HOLDING licensed "GO WEST" which owned the nightclub at the time that the plaintiff performed as a dancer there and which oversaw the operations of the

2

nightclub. This was done through licensing agreements (see copies of same which are annexed as Exhibit A and Exhibit B to the annexed affidavit previously submitted by Curtis Smith, the chief financial officer of SCORES HOLDING.

5.      That contained in the licensing agreements annexed to the affidavit of Curtis Smith which were entered into between SCORES HOLDING, "GO WEST" and the third defendant in this action, ENTERTAINMENT MANAGEMENT SERVICES INC. (hereinafter "ENTERTAINMENT"), there are contained in each of said licensing agreement indemnification provisions whereby "GO WEST" and ENTERTAINMENT indemnified SCORES HOLDING. It is pursuant to those indemnification provisions that SCORES HOLDING filed an amended answer, affirmative defenses and cross-claim bringing into this action "GO WEST" and ENTERTAINMENT.

6.      However, "GO WEST", which operated the "SCORES WEST" nightclub during the period that the plaintiff performed there as a dancer was subsequently closed down by the New York State Liquor Authority based on a revocation of their license due to the fact that it was found that prostitution was occurring on their premises. In this regard, see a copy of the memorandum decision of the New York State Liquor Authority dated May 2, 2007 annexed hereto as Exhibit A.

7.      Neither co-defendant "GO WEST" or ENTERTAINMENT have appeared in this action; they have both defaulted in appearing. Furthermore, both "GO WEST" and ENTERTAINMENT are defunct and devoid of assets, facts which counsel for the plaintiff is well aware of and is one of the reasons why when this action was commenced, "GO WEST" was not named as a defendant. Thus, it is respectfully submitted that the only viable defendant remaining

3

in business and in existence is SCORES HOLDING and for this reason, counsel for the plaintiff have been desperately trying to search for evidence to link SCORES HOLDING to the operation of the "GO WEST" nightclub back in 2005 when the plaintiff was entertaining there; including attempts by plaintiff's counsel in the one deposition of Howard Rosenbluth, present chief financial officer of SCORES HOLDING, which they conducted prior to the Court ruling that discovery was closed on September 3, 2010 which amounted to little more than a "fishing expedition".

8.   It is respectfully submitted that as of this point in the above-entitled action, plaintiff and her counsel have failed and been unable to produce even one item of evidence to show any of the following points in support of the allegations contained in their complaint:

(a)   No single item or agreement to show that there was any direct relation or contract or agreement between plaintiff RUTH FOWLER and SCORES HOLDING.

(b)   No single piece of information to connect any officer or director of SCORES HOLDING with participation or control of the night club known as "SCORES WEST" during the brief, approximate three-month period when the plaintiff performed there as a dancer.

(c)   No definite identification of managers at "GO WEST" who allegedly sexually harassed the plaintiff other than nebulous responses giving only first names and failing to identify the parties, including the failure to give addresses for any of the parties other than the address where the club previously operated at 536 West 28th Street, which obviously is not the residence address of the people.

(d)   No documents, employee manuals, guidelines, directives with respect to the

4

operation of the old "GO WEST" nightclub to indicate or which contain identification of SCORES HOLDING thereon.

(e)     No document supporting claims in the complaint with respect to alleged damages to the plaintiff for:

(1)     Physical injuries, including drug cost, hospitalization, doctors bills or psychiatric treatment.

(2)     Not one document to show a loss of earnings suffered by the plaintiff as claimed in the complaint.

(3)     Not one actual documentation of losses suffered due to "loss of reputation, mental anguish", etc. other than the mere unsupported allegations of the plaintiff herself given during deposition testimony.

(4)     Not one document which clearly indicates thereon that any monies that were deducted from the plaintiff during the time she performed as a dancer at the "GO WEST" night club were actually deducted by or taken out of her earnings by SCORES HOLDING or any officers of SCORES HOLDING or any employees of SCORES HOLDING.

(5)     It may, arguendo, well be the case that certain employees who worked at the "GO WEST" nightclub in 2005 during the time of the incidents complained of in the allegations contained in the complaint may have been involved in the incidents complained of; however, there is not one single iota of evidence that's been produced to show that any of these individuals were employees of anyone other than "GO WEST", the owner and operator of the "SCORES

WEST" nightclub in 2005 when the plaintiff was performing there as a dancer. There is no single document that's been produced that would tend to show or connect SCORES HOLDING with any of these individuals or to prove that SCORES HOLDING participated in hiring or firing or in any way exercising operative control of the "GO WEST" nightclub while the plaintiff performed as a dancer at said nightclub.

9.      Throughout all of the mandatory disclosures, the deposition testimony of the plaintiff and the responses to the defendant's request to produce documents and request for responses to interrogatories, the information supplied has been evasive, nebulous, shown in such a manner as to totally "sidestep" the giving of proper responses and disclosures as required under the statute and completely and utterly devoid of any documentation to support the allegations contained in the complaint against SCORES HOLDING or to either indicate that SCORES HOLDING or its officers operated the prior "GO WEST" nightclub or that there were ever any transactions directly between SCORES HOLDING and the plaintiff herein. To the contrary, as is further detailed hereinbelow and the exhibits annexed hereto, the plaintiff freely admits that she signed an agreement with SCORES HOLDING entitled "Entertainer Independent Contractor Agreement" right at the outset and start of her relationship as a performer at the club.

10.     Unfortunately, it is respectfully submitted that it is impossible to comprehend the total evasiveness and nebulousness of the disclosures and responses to discovery as well as the plaintiff's deposition testimony in this action without spending time to carefully view these documents. Thus, for that reason, annexed hereto in a separate binder as Exhibit B is the

6

plaintiff's mandatory disclosures; as Exhibit C, the full transcript of the testimony of the plaintiff taken on August 23, 2010; Exhibit D, the total responses of the plaintiff to the interrogatory requests of defendant SCORES HOLDING; and Exhibit E, the total responses of the plaintiff to the request to produce documents served by defendant SCORES HOLDING, including the exhibits annexed thereto. Due to the volume of the aforesaid exhibits, they are contained in a separate binder annexed hereto.

11.     In looking at Exhibit B, Plaintiff's Mandatory Disclosure, starting with (A), it can be seen that these are incomplete and nebulous, identifying individuals by first name only, such as "Mr. Alex, Mr. Patrick or Mr. Tommy" and giving as their address the address of the former "GO WEST" nightclub (which is now defunct), is hardly a proper and full response on the disclosures. Furthermore, in No. 7, plaintiff's counsel throws in a generality, as follows: "All dancers, waiters, house-moms employed and/or working at the establishing located at 536 West 28th St., New York NY 10001 between September-December 2005." It is respectfully submitted that this is not only incomplete but is really "sidestepping" the required disclosure and amounts to no disclosure at all. In Part (B), again, with respect to describing the documents which the disclosing party may use to support its claims, plaintiff's counsel lists five general categories of possible documents without specifically identifying any one document, but just generally throwing in every category of document that the plaintiff could possibly imagine. Further down, in Exhibit B, under "C-1", plaintiff lists the damages being sought in total generalities without giving any specifics whatsoever as to actual losses suffered or out-of-pocket expenses she is seeking to recover. Instead, the plaintiff's counsel merely lists the following:

"Plaintiff identifies that she is seeking monetary and compensatory damages as a result of defendants' unlawful actions, including loss of past and future earnings and other employment benefits, emotional distress damages for mental anguish and humiliation, punitive damages, attorneys fees and costs, and interest, in an amount to be determined by the jury at the trial of this action."

As will be further documented hereafter, as of this date, neither plaintiff nor her counsel have been able to document even one dollar of actual losses, lost earnings, medical expenses, hospitalization costs, loss of employment benefits or losses suffered due to "mental anguish and humiliation" as against the defendant SCORES HOLDING.

12.    There is a complete lack of any documentation or evidence given by the plaintiff during her deposition testimony to in any way support the fact that she was other than an independent contractor; however, even if, arguendo, she was an employee, then she would have been an employee of "GO WEST", the company that operated the nightclub during the brief three-month period she performed there as a dancer in 2005; to in any way connect SCORES HOLDING or any officers or employees of SCORES HOLDING with any of the acts or allegations contained in the complaint and, lastly, there is absolutely no documentation given to show any amount of support for any claimed damages in terms of lost earnings; employee benefits, medical or drug costs, hospitalization costs or any actual damages suffered under the nebulous categories of "emotional distress, mental anguish and humiliation".

13.    Hereinbelow, I shall endeavor to highlight those portions of Ms. FOWLER's deposition testimony which indicate the total lack of documentation and knowledge with respect to damages and connecting SCORES HOLDING to any transaction which took place directly with her:

8

(a)  Page 6, (line 6 thru 13) in which Ms. FOWLER indicates she is neither at the present time a permanent resident or a U.S. citizen, nor has she applied to become a U.S. citizen.

(b)  Page 10, (lines 1 thru 25). Ms. FOWLER testifies that when working at another adult nightclub called Flash Dancers, her income was not derived from a salary but merely from gratuities and tips.

(c)  Page 14 (starting at line 6 and continuing thru page 15 and onto page 16, line 5), Ms. FOWLER identifies her signature on a contract between "GO WEST" and herself entitled "Entertainer Independent Contractor Agreement" and states that she did sign that agreement and further states, as follows: "I read it then. I don't sign things without reading them. I just can't specifically remember the wording."

(d)  Page 20 (line 22 and continuing on page 21 thru line 2). Ms. FOWLER indicates that on average she worked three nights a week at SCORES.

(e)  Further on, on page 21 (lines 19 thru 23), she indicates that she worked at "SCORES WEST" during the period from September 5 thru the end of December 5.

(f)  Page 22 (lines 2 thru 10). Ms. FOWLER indicates that when she was not working three nights a week at SCORES, she pursued a career in journalism and also wrote a book.

(g)  Page 23 (lines 15 thru 19). Ms. FOWLER admits that the book which was published was with respect to her memoirs as a performer in the adult nightclub world.

(h)  Pages 31 thru 35. Ms. FOWLER testifies that she tipped or made payments to certain personnel at SCORES including house moms, the DJ, managers, security guards,

9

bathroom attendants, waiters and bartenders.  When asked who told her she was required to do this (page 31, lines 15 thru 21), she indicated "All the managers". With respect to the managers, she gave only first names, "Alex, Tommy, Patrick". She  also indicated that she was instructed to do so by the house mom and the DJ, however, she could not identify those people and she could not identify the managers by last name either.  Furthermore, no evidence was adduced to show that any of these individuals were employees of anyone other than the company that operated the nightclub at the time she worked there, "GO WEST".  There was no evidence given that any of these individuals were people employed by SCORES HOLDING.  In many instances, the responses she gave were evasive and nebulous, such as the responses contained on page 35, (lines 9 thru 17).

(i)     Although she testifies that she suffered humiliation due to the fact that it became generally known that she had been a stripper in adult nightclubs, she admittedly self-perpetuated that by writing a book on the subject which was published in 2008 and earning all sorts of monies writing articles and giving interviews the subject of which was her active life working as a topless dancer at various adult nightclubs.  In addition, she ran her own website under the name "MimiNewYork.blogspot.com all during the period from March 2005 even up to the current date.  See testimony at page 53 (lines 10 thru 23).

(j)     At page 108 (lines 20) thru Page 109 (line 8), Ms. FOWLER could not recall the names of the people, such as waiters and securities guards, that she claimed she made payments to, with the exception of the first names of three people purported to be

10

managers at the claimed named as "Alex, Tommy, Patrick".

(k)     Page 24 (lines 17) thru Page 25 (line 7). Ms. FOWLER testifies that her book, called "No Mans Land, a Memoir" on which her actual name appears was published by Viking in 2008 and that she received a writer's advance in the amount of $50,000.00. In addition, the Court's attention is invited to a copy of the book cover itself, which is annexed hereto as Exhibit F.

(l)     Page 49 (lines 7 thru 10). Ms. FOWLER testifies that she never filed a United States income tax return for the monies she earned while performing at SCORES.

(m)     Page 43 (lines 17 thru 19). Ms. FOWLER testifies that on a good week she would earn $1,000.00 for three nights work.

(n)     The Court's attention is further invited to contents of an article Ms. FOWLER wrote for the London Observer, in terms of comments she wrote in the article (see page 41, line 17 thru page 42 line 25). Among her writing in the article was the following commentary: "I love the dirt of Scores, reveled in the filth. I made huge amounts of money - yet rarely, in the morning, remembered how. Working for Scores was like having a relationship with an abusive boyfriend. You knew it was destructive; the drinks downed, drugs snorted, crotches ground to dust. You knew it was bad for you, but you went back every night."

(o)     Page 45 (lines 9 thru 23). Ms. FOWLER admits that after leaving SCORES, she went to work for another adult entertainment club called VIP and signed an agreement which might have been similar to the "GO WEST" independent contractor agreement that she signed.

11

(p)     Page 64 (lines 1 thru 20).  In an interview given by Ms. FOWLER to a reporter by the

        name of Paul Berger, writing for the New York Times website, the article quotes Ms.

        FOWLER as having responded to Mr. Berger as follows: "Mimi says she earned

        $2,000 to $3,000 in a four-day week."

(q)     Page 81 (lines 17 thru 25).  Ms. FOWLER indicates that she suffered bruises due to

        an incident with one of the managers at the club and when asked to produce any

        proof of medical costs or hospitalization or drug costs, her response was as follows:

        "No.  I didn't have health insurance."

(r)     Pages 82 and 83.  Ms. FOWLER admits that she neither filed at any time a complaint

        to report incidents of sexual harassment with the management at the club, the New

        York City Human Rights Commission, the New York State Department of Labor, the

        U.S. Equal Employment Opportunity Commission or the attorney for the "SCORES

        WEST" nightclub at the time.  Furthermore, she indicates she never brought any legal

        action against SCORES HOLDING for the sexual harassment incidents or filed a

        police complaint.

(s)     With respect to the connection of SCORES HOLDING with respect to the one

        manager, allegedly named "Tommy" who assaulted her and the direct connection of

        SCORES HOLDING to the operation of the "SCORES WEST" club where she

        worked, Ms. FOWLER gave the following testimony at pages 85 thru 87 of the

        transcript and, in particular, I am going to quote this testimony due to the importance

        in showing the total lack of knowledge or submission on the part of the plaintiff that

        the defendant, SCORES HOLDING, was in any way connected with the ownership

or operation of the "SCORES WEST" nightclub. Thus, the pertinent testimony is as follows:

"Q.  Did you ever attempt to file any criminal charges with regard to this assault by Tommy?

A.  No.

Q.  Now, do you personally have any knowledge as to who paid Tommy's salary?

A.  No.

Q.  Do you know – or do you know if you had any personal direct transactions with anyone who was an officer or employee of the defendant Scores Holding Company?

A.  I assumed everyone who worked at Scores was related to Scores Holding.

Q.  Okay.  But that assumption meant that you assumed Scores Holding was the operator of the Scores nightclub?

A.  From what we knew as employees, Go West was a name that appeared on people's credit cards so that men could go to strip clubs and their wives wouldn't see Scores on their credit card bill and Scores Holding was directly involved and related to Go West.

Q.  Okay.  But that was an assumption or something that you have heard; is that correct?

A.  Something, yeah, that we all heard or knew.

Q.  Do you know anyone specifically anyone specifically who was an officer or worked for Scores Holding as opposed to Go West Entertainment, Inc. Or you just assumed that they were one and the same?

A.  I don't know anyone who's related to Go West or Scores Holding.  I don't know who..

. . .

Q.  You don't know who was related to which company?

13

A. No.

Q. But did you assume that they were one and the same?

A. No, I just assumed they had different names for different reasons, but they were financially - - they just worked together.

Q. Okay. But that was something you assumed or had heard by way of –

    MR. LEVINE: She didn't see any corporate documents.

A. No.

    MR. BURKETT: I didn't ask her that.

Q. But that was something you assumed or had heard from other dancers; is that correct?

A. I heard, yeah."

(t) With respect   to any damages being claimed for emotional distress, humiliation and loss of reputation, Ms. FOWLER gave the following testimony at page 87 (line 15) continuing thru page 88 (line 7). The testimony is as follows:

"Q. Okay.   Now, the complaint in this action further states that you suffered damages and that you're seeking monetary compensatory damages for various things; emotional distress, humiliation and loss of reputation.

    Would you tell us for the record how any of these incidents resulted in a loss of reputation to you and what reputation it is that you're referring to?

    THE WITNESS: (looking to her attorney) Do I answer that?

Q. He can't answer it for you.

14

A. I suppose a loss of reputation – I was a well-educated, conservative, nice Welsh girl and suddenly I was related to strip clubs, and the loss of reputation became must apparent to me when I wrote my book and I sold it in the U.K. to a company called Harper Collins."

See also testimony on pages 89 and 90. It is respectfully submitted that this testimony is not only nebulous but is totally inconsistent and contradictory to the actions of the plaintiff wherein she perpetuated in public the information of her life as a stripper in adult nightclubs through writings in her book, magazine interviews that she gave and articles she wrote in the London Observer, among other publications, and comments she made in the blog she kept from 2005 up to the present time. Copies of some of these articles were produced in response to the notice to produce served by the defendant herein and are annexed hereto as part of Exhibit E.

14. To sum up, a careful review of the deposition testimony given by Ms. FOWLER indicates that she failed to produce even one document to support any of the damages that she claimed, nor was she able to produce any document directly connecting SCORES HOLDING or any of its officers with the operation of the "SCORES WEST" nightclub in 2005; nor was she able to provide any definite indication via her testimony that she knew for a fact that SCORES HOLDING operated the "SCORES WEST" nightclub in 2005. At the very most, she could only indicate that she assumed that SCORES HOLDING was involved in the operation of the "SCORES WEST" nightclub based on rumors and talk she had heard with the other dancers, but she knew of no definite facts to connect SCORES HOLDING with the operation of the "GO WEST" nightclub. Furthermore, the agreement that she signed when

she first started to perform as a dancer at the club is not signed by SCORES HOLDING but is clearly an agreement only between her and GO WEST ENTERTAINMENT INC.

15.     Let us now turn briefly to the responses to defendants interrogatories provided by the plaintiff and her counsel in this action. See Exhibit D annexed hereto for the entire responses served by the plaintiff to defendant's interrogatories. In most instances, responses given by the plaintiff and its counsel to certain interrogatories are incomplete, evasive or attempt to "sidestep" the actual information sought by the interrogatory itself. Thus, in particular, the Court's attention is invited to responses given to Interrogatories No. 11, 13, 14, 16, 17, 18, 20 and 23.

16.     In particular, the Court's attention is directed to Interrogatory No. 13 which says, "List each and every date and hours worked on each date that plaintiff performed at the adult entertainment nightclub located at 533-535 West 27th Street, New York, New York (referred to hereinafter as "SCORES WEST"). ANSWER: Subject to and without waiving the foregoing rights and objections, plaintiff cannot recall each and every date and hours work, but identify such information is in the defendant's possession pursuant to statutory recordkeeping requirements. Plaintiff further identifies that she typically worked three (3) times per week and recalls having worked at Scores West on the following dates between September- December 2005: September 12, 13, 26, 18, 20 2005; October 2, 4, 5, 7, 16, 17, 18, 31, 2005; throughout November 2005 and on November 23, 2005." To begin with, the plaintiff was not an employee of either "GO WEST" or SCORES HOLDING, which is proven by the fact  that she never received an actual salary payment from either of the aforesaid defendants, nor were any taxes ever deducted from her wages. She supplied her

16

own costumes and it is freely admitted that the independent contractor agreement allowed her to work elsewhere and she did, in fact, pursue an avocation as a writer when she was not employed dancing at the "SCORES WEST" club. It follows, also, that if the plaintiff was not an employee, then there are no "statutory recordkeeping requirements" as referred to in the response to this interrogatory. Beyond all this, even if it were found that the plaintiff was an employee, she would only be an employee of "GO WEST". There is not one item of evidence adduced in any of the discovery responses or the testimony of the plaintiff to prove that SCORES HOLDING was in any way involved in operating the "GO WEST" nightclub.

17. Interrogatory No. 14 requests "Provide a list of each and every payment whether in cash or by check, received by the plaintiff while she performed as a dancer at SCORES WEST, giving the date and the amount of any such payment." "ANSWER: Subject to and without waiving the foregoing rights and objections, plaintiff is conducting a search for information responsive to this interrogatory and will provide defendant with such information at a later date and under separate cover." It must be noted that the plaintiff herein has never provided any proof with respect to payments which were made to her by "SCORES WEST" when she performed at "SCORES WEST" and more particularly, she has never provided any documentation to show any payments were made to her by SCORES HOLDING.

18. Interrogatory No. 16 requests "List the names and addresses of all individual whom the plaintiff claims were her direct supervisors while she was working as a dancer at SCORES WEST club during the period as set forth in Paragraph 13 of the Complaint." "ANSWER: Subject to and without waiving her foregoing rights and objections, plaintiff identifies the following individuals who served as her managers and/or direct supervisors while working

17

as a dancer at Scores West: Alex (last name unknown), Manager; Patrick (last name unknown), Manager; Tommy (last name unknown), Manager; Elliot (last name unknown), part-Owner.  Plaintiff further identifies that defendant is in possession of information responsive to this interrogatory pursuant to statutory recordkeeping requirements.  This last sentence is a perfect example of the "sidestepping" technique and evasiveness of plaintiff's counsel and/or plaintiff in responding.  The interrogatory seeks information in the possession of the plaintiff with respect to names and addresses.  Instead of responding to that, plaintiff's counsel would seek to turn the tables by stating that he identifies that the defendant is in possession of information responsive to this interrogatory.  Well, interrogatories are not meant to obtain information in possession of the person who is posing the interrogatories, but rather of the person who is responding to the interrogatories, and then they further put in the phrase "pursuant to statutory recordkeeping requirements."  It would be interesting to find out exactly what "statutory recordkeeping requirements" without specifying the same that plaintiff's counsel is referring to, since while there are certain statutory requirements for keeping records as to payments or monies paid or hours worked by a person, at least this affirmant is not aware of any statutory recordkeeping requirements to list the names and addresses of supervisors of each employee.

19.     In responding to Interrogatory No. 18 for deductions allegedly taken by the defendant from the gratuities received by the plaintiff, while the Answer lists various general categories and monetary amounts of gratuities allegedly paid to those categories of employees, at no time does it indicate that any person at either "GO WEST" or SCORES HOLDING physically and specifically took the money or deducted the money from the plaintiff herein.  It is certainly

acknowledged and possible that recommendations may have been made to the plaintiff that other categories of people should be tipped by her, and perhaps such recommendations may even have been strong recommendations, but this is not quite the same as someone physically taking money from the plaintiff's hand or pocket and deducting that money from her to give to these categories of individuals. The answer or response does not indicate that anyone at "GO WEST" or SCORES HOLDING deducted these monies from the plaintiff and then, in turn, took those monies and paid them to the categories of individuals that are listed in the response.

20.   In Interrogatory No. 20, information is sought as to specific items of lost earnings, past and/or future, and damages suffered which are listed in the Complaint as monetary and compensatory damages and also damages suffered due to claimed "humiliation and lost of reputation". In response to this, instead of providing even one document or one item of specific damage or information, the evasive, "sidestepping" answer, which is a pattern to the responses given by the plaintiff, provides as follows: "Answer: Subject to and without waiving the foregoing rights and objections, plaintiff identifies that she is seeking monetary and compensatory damages as a result of the defendant's unlawful actions, including loss of past and future earnings and other employment benefits; emotional distress damages fo mental anguish and humiliation; punitive damages; attorneys' fees and costs as awarded by the court, and interest. Plaintiff further identifies that her emotional distress damages for mental anguish and humiliation and punitive damages will be in an amount to be determined by the jury." Well, isn't this a lovely repetition of the general allegation contained in the plaintiff's complaint. However, it is anything but a direct response to the information sought

in Interrogatory No. 20. It, in fact, totally evades the information sought in Interrogatory No. 20 and fails to present any specific item of lost earnings or damages in any of the general categories to which the plaintiff claims she is entitled to damages. This may likely be an indication that plaintiff doesn't have any such documentation for any such damages. Certainly, this is not a direct response to the information sought in Interrogatory No. 20. It is a clear attempt to "sidestep" giving a correct response to that interrogatory.

21.     Lastly, Interrogatory No. 23 states as follows:

"State the name of all persons or agencies who investigated any of the claims made by plaintiff in her Complaint."

"ANSWER:  Subject to and without waiving her forgoing rights and objections, plaintiff is not in possession of any information responsive to this interrogatory."

Here, once again, the plaintiff clearly admits that she has no documents to back up her claim that any assault or acts of sexual harassment against her were at any time reported or investigated by any persons or agencies. This is further corroborated by the plaintiff's direct testimony given at her deposition.

22.     Let us now for a moment examine the responses given by the plaintiff to defendant's request to produce documents. Once again, if the Court carefully examines these, It is respectfully submitted that the Court will find that the responses in general talk in generalities. Very few specifics are given and no documents are given which would prove a direct connection between the defendant SCORES HOLDING and the plaintiff. Very often, the responses seek to "sidestep" the document request by indicating that the documents requested are in the possession of one or more of the defendants. However, most respectfully, clearly the objects

20

of these document requests are not for the plaintiff to respond that she thinks the documents may be in the possession of the defendants. The purpose of these requests are to find out which documents, if any, are in the possession of the plaintiff herein.

23.    Thus, Document Request No. 1 which asks for "All written agreements and/or contracts by and between the plaintiff, SCORES HOLDING COMPANY, INC. (hereinafter "SCORES HOLDING") and GO WEST ENTERTAINMENT, INC. (hereinafter "SCORES WEST SIDE") at any time during the period from January 1, 2005, up to the and including December 31, 2007."

"RESPONSE: Subject to and without waiving her foregoing rights and objections, plaintiff is not in possession of any documents responsive to this request and further identifies that any such agreements or contracts executed by plaintiff were collected and retained by defendants."

Well, with the utmost respect, it is pointed that if the plaintiff herein was careless and negligent enough not to keep copies of any contracts she signed, then the onus of that carelessness and negligence must be attributed to the plaintiff and not to the defendants.

24.    In Response No. 2 requesting copies of all written correspondence between plaintiff SCORES HOLDING or SCORES WEST SIDE, once again, plaintiff responds as follows, in part: "Plaintiff does not recall having any written correspondents responsive to this request nor is she in possession of such correspondence." Thus, there are no documents to indicate any correspondence or communication between the plaintiff and SCORES HOLDING.

25.    Response No. 4 seeks "Copies of all W-2 forms and/or 1099 forms received by plaintiff during the calendar years 2005, 2006 and 2007." To this, the plaintiff's response is as

follows:   "RESPONSE:   Subject to and without waiving her foregoing rights and objections, plaintiff is not currently in possession of any W2 or 1099 forms responsive to this request and further identifies that she worked through the United Kingdom."  What an absolutely incongruous and absurd statement.  How could she work through the United Kingdom when she was living and working at the time in the United States, albeit illegally. A similarly evasive and nebulous response is contained with regard to Document Request No. 5.

26.    Document Request No. 6 seeks "Any records kept by plaintiff showing the days, hours and times worked by plaintiff at SCORES WEST SIDE at any time during the period from January 1, 2005, up to and including December 31, 2007."  Again, her response seeks to "sidestep directly answering the information called for or the documents called for in the request, the response being as follows: "RESPONSE:   Subject to and without waiving her foregoing rights and objections, plaintiff is not currently in possession of any documents directly responsive to this request but refers defendants to her answer to Interrogatory No. 13 above.  Plaintiff further identifies that the documents directly responsive to this request should be in defendants' possession pursuant to mandatory notice and recordkeeping requirements."  (This assumes the fact that plaintiff was an employee, which she was not, she was an independent contractor pursuant to an agreement and thus there are no recordkeeping requirements).  Her answer to Document Request No. 7 is to produce no documents and is similarly evasive.

27.    Document Request No. 8 seeks copies of any and all complaints of sexual harassment in written form filed by the plaintiff with either "SCORES WEST SIDE" or any other adult

nightclub. Her response was as follows: "RESPONSE: Subject to and without waiving her foregoing right and objections, plaintiff is not currently in possession of any documents responsive to this request.

28.    In response to Document Request No. 9 for copies of police reports filed by the plaintiff, she again responds that she is not currently in possession of any documents responsive to this request.

29.    In response to Document Request No. 11, plaintiff fails to produce any documents and freely admits she has not filed any discrimination complaints with the aforementioned agencies.

30.    In response to Document Request No. 12, see copies of bills for drugs, medical or hospital treatment for her claimed injuries. The response given by the plaintiff is: "RESPONSE: Subject to and without waiving her foregoing rights and objections, plaintiff is not currently in possession of any documents responsive to this request and further identifies that she was not taking any medication or medical treatment during her employment with defendants."

31.    A similar response is given to Document Request No. 13 seeking copies of all bills for prescribed drugs, medicine and hospital treatment.

32.    When Document Request No. 14 seeks any written correspondence between plaintiff and the nightclub's lawyer, again, no documents are produced and the plaintiff indicates, partially, as follows: "plaintiff is not currently in possession of any documents responsive to this request."

33.    Similarly, in responding to Document Request No. 15 seeking copies of complaints alleging violation of New York Labor Laws, the response was as follows: no documents were adduced, and the was, "RESPONSE: Subject to and without waiving her foregoing rights and

objections, plaintiff is not in possession of any documents responsive to this request alleging violation of the New York Labor Laws aside from any allegations set forth in this instant action."

34.    Finally, the only document request to which the plaintiff and her attorneys did produce documents was with regard to copies of books, stories and articles written by the plaintiff about the adult entertainment industry from 2002 to the present. The Court's attention is, in particular, invited to these particular documents which were produced to clearly indicate that plaintiff herself perpetuated the public knowledge of the fact that she had worked as a stripper in various nightclubs in the adult entertainment industry and could not have suffered a loss of reputation or humiliation other than the fact that she herself perpetuated same. It is respectfully submitted, that this in itself points up the ridiculous nature of the allegations contained in the plaintiff's complaint that she suffered "mental anguish, loss of reputation and humiliation". If she did suffer any of those things, it was due to her own making.

<u>PLAINTIFF HAS NOT PRODUCED ANY DOCUMENTATION OR PROOF TO SHOW THAT THE ACTUAL DAMAGES SHE SUFFERED IN ANY WAY EXCEEDS THE JURISDICTIONAL AMOUNT OF $75,000.00 OR EVEN COMES CLOSE TO SAID AMOUNT. FURTHERMORE, PLAINTIFF HAS FAILED TO ADDUCE ANY DOCUMENTATION OR PROOF THAT ANY SUCH DAMAGES ARE DUE TO THE ACTS OF THE MOVANT, SCORES HOLDING.</u>

35.    It is respectfully submitted that based on the documentation adduced as of this date by the plaintiff and her counsel, there is no clear indication to support any damages that even approach the sum of $75,000.00. Let us for a moment examine the allegations in the causes of action contained in the complaint. The first cause of action is for sexual harassment discrimination. Plaintiff has failed to provide any bill or documentation or evidence of losses

suffered due to sexual harassment. Furthermore, the plaintiff has failed to be able to show that any of the acts of alleged sexual harassment were done by people who were employed by SCORES HOLDING rather than by "GO WEST". Plaintiff freely admits that she made no reports of the acts of sexual harassment either to the club management at the time or to any New York State Human Rights Agency or New York City Human Rights Agency. Thus, it is respectfully submitted, merely making a general allegation that she has suffered "loss of past and future earnings and other employment benefits and has suffered other monetary and compensatory damages for inter alia, mental anguish, emotional distress, humiliation and loss of reputation" is nothing more than verbiage thrown into this complaint until the plaintiff is able to back it up by some solid documentation or proof.

36.   The second cause of action of the complaint is similarly a claim of discrimination based upon sex under the New York City Human Rights Law. Once again, as of this date, no documents have been produced; no bills or any other documents to indicate any dollar amount or any specific damages as being claimed in this cause of action. Beyond all this, both the first and second causes of action of the complaint assume that the plaintiff was an employee of the nightclub at the time, which was operated by "GO WEST"; which, based on the evidence, she clearly was not. She was clearly an independent contractor and not an employee. However, even if, arguendo, she would be deemed to be an employee, any such employment would have been by "GO WEST". Not one iota of documentation has been produced to show that there was any relationship of any kind whatsoever between the plaintiff and defendant SCORES HOLDING.

37.   Likewise, the third and fourth causes of action seek to recover damages for "hostile work environment under the New York State Human Rights Law and also under the New York City Human Rights Law. Once again, it is pointed out that not one dollars of actual specific damages has been documented to show the general description of damages thrown into the allegations of the complaint under the following language: "Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary and compensatory damages for, inter alia, mental anguish, emotional distress, humiliation and loss of reputation." It is interesting to note that in none of the first four causes of action of the complaint is any specific dollar amount of damages indicated. It is respectfully submitted to this Court that it is quite easy to make generalized allegations of general categories of damages, but I think the Court will agree, the basic idea is that these must be substantiated. As one oft-quoted country philosopher would say, "yes, but I'm from Missouri, show me." Certainly, I believe the same philosophy has to hold true in this Court.

38.   Lastly, in the final and fifth cause of action of the complaint, the plaintiff seeks to recover for unlawful wage deductions in violation of the New York Labor Laws. Paragraph 58 of that cause of action reads as follows:

"58. Defendant unlawfully required plaintiff to share part of the gratuities received by plaintiff with employees other than waiters, servers, busboys, or similar employees during the course of her employment as Scores West Side."

First of all, this is inconsistent with the deposition testimony of the plaintiff wherein she testified that she was required to tip waiters, bartenders, bathroom attendants and busboys. Secondly, Paragraph 57 states:

"57. Defendant unlawfully retained a part of the gratuities received by plaintiff during the course of her employment as Scores West Side."

As of this date, there has been no documentation, proof or evidence evoked by this plaintiff to show that anyone at the defendant SCORES HOLDING forced her to share part of her gratuities, unlawfully retained a part of her gratuities or even at any time came into possession of any gratuities received by the plaintiff. The plain fact is that the gratuities received by the plaintiff as a dancer (independent contractor, not employee) were received by the plaintiff directly from the patrons on the club. Such gratuities were not at any time paid over to the operator of the club at the time and much less to SCORES HOLDING, which had absolutely nothing to do with the operation of the club at the time. No documentation or evidence has been produced to show that anyone forcefully required the plaintiff to pay over gratuities to other people. Certainly, it is common practice in the adult entertainment industry that dancers will tip other employees at a club. However, this is pursuant to practice; it is voluntarily, even though very often recommended, but certainly the plaintiff has not been able to nor did she testify that anyone specifically forced her to give over such gratuities and certainly, the plaintiff never at any time identified any officer or employee of SCORES HOLDING in that regard. The fact that certain of the managers at the club may have strongly recommended to the plaintiff that she should tip certain other employees is not the same as forcing her to do so. Furthermore, no evidence has ever been shown to indicate that amounts received as gratuities by the plaintiff herein directly from the patrons at the club were ever given over to or put in possession of either the current management of the club at the time, GO WEST ENTERTAINMENT, or much less, anyone

27

from SCORES HOLDING. The fact is that such gratuities went directly into the possession of the plaintiff and if she chose voluntarily to follow recommendations of the management to pay certain tips to other employees at the club, this was a voluntary action. It was not an action where supervisory employees at the club physically removed monies from the plaintiff and then took those monies and, in turn, gave the monies to other employees at the club. No such evidence has been proven or shown by the plaintiff herein.

39.     However, let us for the moment give the plaintiff the benefit of the doubt and view the possibility that the plaintiff was required to make certain payments to other employees at the club each evening that she worked there. Pursuant to the information given by the plaintiff in response to Interrogatory 13 and her testimony that on average she worked three evenings per week; during the period from September 2005 until November 23, 2005, the plaintiff worked a total of 25 evenings. Presuming, further, that the plaintiff had to give or make payments to other employees at the club totalling the high amount of $500.00 per evening, the total amount for the time she worked at the club at the rate of $500.00 per evening would come to $12,500.00. Then let us also assume that perhaps the plaintiff had another $10,000.00 in damages, none of which have been proven or documented, that would then amount to $22,500.00. It is respectfully submitted that the plaintiff herein has not presented proof or documentation of damages which would anywhere approach the jurisdictional requirements under 28 U.S.C. Section 1332(a)(1) which is $75,000.00. Thus, it is further respectfully submitted that the complaint herein must be dismissed, since the damages which actually exist in this action and have been documented do not meet the jurisdictional requirement of $75,000.00 and thus it is requested that the Court dismiss the above-entitled

action on the basis of the fact that there is no proof or documentation of any damages coming anywhere close to the sum of $75,000.00. Furthermore, it is respectfully submitted that the Court should note the fact that when plaintiff's counsel put together the complaint in this action, they did not take the time to investigate whether documentation existed to prove that the damages exceeded $75,000.00.

IT IS RESPECTFULLY REQUESTED THAT THIS COURT CONSIDER IMPOSING SANCTIONS ON THE PLAINTIFF'S ATTORNEYS IN THIS ACTION PURSUANT TO THE POWER OF THE COURT AS SET FORTH IN RULE 11(c)(1)(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

40.   It is respectfully submitted that the plaintiff's attorneys and the plaintiff herein have failed to produce one scintilla of documentation or evidence to show that there was any connection between the defendant SCORES HOLDING and the plaintiff, RUTH FOWLER. Furthermore, in total contradiction of the allegations contained in the complaint, it is respectfully submitted that the evidence indicates that the plaintiff herein was not an employee but an independent contractor and knew quite well this was her arrangement, in having signed an agreement with GO WEST ENTERTAINMENT INC. titled "Entertainer Independent Contractor Agreement" (see copy of same annexed hereto as Exhibit A to the supporting affidavit of Elliot Osher). It is further respectfully submitted that it seems clear that the plaintiff's attorneys herein never bothered to do a full background inspection to determine whether there was sufficient proof to backup the allegations contained in the complaint. Instead, it is respectfully submitted, it is apparent that plaintiff's counsel plunged headlong, frivolously into the commencement of this action in what, it is respectfully submitted, is no more than a blatant shakedown attempt to recover monies from the

defendant, SCORES HOLDING.

41.   Rule 11(b)(3) of the Federal Rules of Civil Procedure provides as follows: "(b) Representations to Court. By presenting to the Court (whether by signing, filing, submitting or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . .

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;"

Thereafter, Federal Rule 11(c) provides as follows: (c) Sanctions.  If, after notice and a reasonable opportunity to respond, the Court determines that Subdivision (B) has been violated, the Court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms or parties that have violated Subdivision (B) or are responsible for the violation.

42.   It is respectfully submitted that by filing a complaint which the plaintiff and its counsel have been completely unable to support nor have they been unable to document that the complaint meets the jurisdictional amount requirement of $75,000.00, that the actions of plaintiff's counsel herein were totally frivolous, unconscionable and in violation of Rule 11(b)(3). Furthermore, it is clear under Rule 11 that the Court has the power and discretion under its own initiative to enter an order or initiate proceedings to impose sanctions upon plaintiff's counsel.

43.     With respect to the power of the Court to impose sanctions pursuant to Rule 11 and the

guidelines to be followed in doing so, the Court's attention is directed to the case of Lillie

Willis, et al vs. City of Oakland, et al, a 2005 decision in the U.S. District Court for the

Northern District of California, (231 F.R.D. 597). For the convenience of the Court, a copy

of this decision is annexed hereto as Exhibit G. In the aforesaid case, it was held by the

Court that the attorneys did not conduct an adequate investigation before filing the complaint

and were liable for Rule 11 sanctions. In its decision, in discussing the criteria the Court

should consider before imposing sanctions, the Court stated as follows: "Where, as here, the

complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-

prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from

an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent

inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 118, 1127 (9[th]

Cir.2002) (quoting *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir.1997)) . In other words,

it is not enough that an attorney conducted an insufficient factual investigation before filing

the complaint; the complaint must also be, from an objective perspective, legally or factually

baseless. See *In re Keegan*, 78 F.3d at 434-35 (disapproving *Unioil, Inc. v. E.F. Hutton and

Co.*, 809 F2d 548 (9th Cir.1986)). The inquiry whether the complaint is factually baseless can

be stated thus: would a reasonable attorney have believed plaintiff's complaint to be well-

founded in fact based on what a reasonable attorney would have known at the time?"

44.     I defer to the discretion of the Court as to what, if any, action to take in this regard.

However, it is respectfully submitted that a careful review of the complaint and the testimony

of the plaintiff during her deposition, as well as the responses to the interrogatories and documentary evidence produced, clearly indicate that there is no evidence or substance to the complaint as against the defendant SCORES HOLDING. To the contrary, a careful review of all the documents and, in particular, the deposition testimony of the plaintiff, clearly indicate multiple inconsistencies and contradictions which should have advised any reasonable attorney, it is respectfully submitted, that this entire action was without merit.

45.   That there was a previous motion to dismiss brought by defendant SCORES HOLDING in or about May of 2009. That motion was decided by a decision of Hon. Justice Victor Marrero dated December 28, 2009. A copy of that decision and order is annexed hereto as Exhibit H.

46.   It should be noted that on page 2 of that decision, Justice Marrero makes the following observation:

> "Fowler has not had the opportunity to conduct discovery that could uncover evidence to support her allegations. The Court accordingly denies Scores Holding's motion for summary judgment without prejudice, grants leave to renew the motion after relevant discovery has been completed, and treats Scores Holding's motion only as a motion to dismiss."

47.   Now, plaintiff has had her opportunity for discovery and discovery was completed pursuant to the scheduling order of the Court on September 3, 2010. It is respectfully submitted that after the completion of all the discovery in this action, the plaintiff and her counsel have failed to adduce any evidence showing there was a business relationship of any sort between SCORES HOLDING and the plaintiff, RUTH FOWLER. Furthermore, it is respectfully submitted that even giving the plaintiff and its counsel the benefit of every doubt, that based on the lack of documentation, that the damages which can be proven or have been proven as

of this date in this action do not even come close to the jurisdictional amount of damages

required pursuant to the provisions of 28 U.S.C. Section 1332(a)(1) of $75,000.00.

48.     Thus, it is submitted that since the relief in the complaint herein is based upon the ~~of~~ an *(existence)*

"employer-employee relationship" and no such relationship ever existed between the plaintiff

and SCORES HOLDING or has been proven to have existed, that the complaint herein fails

to state a claim against the defendant SCORES HOLDING on which relief may be granted

and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Federal Procedure.

49.     Furthermore, it is respectfully submitted that the plaintiff has failed and cannot raise any

issue of fact to contravert the evidence presented in the defense of this action by the

defendant SCORES HOLDING.  It is respectfully submitted that the evidence submitted in

support of this motion clearly indicates that there exists no material issue of fact as to the

defendant SCORES HOLDING ever having had an "employer-employee relationship" with

the plaintiff and thus the Court may treat this motion as one for summary judgment and

should grant an order of summary judgment in favor of defendant SCORES HOLDING,

dismissing the complaint herein.

50.     That, furthermore, it is respectfully submitted that no solid documentation or evidence has

been adduced by the plaintiff or its counsel as of this date to prove actual and existing

damages suffered by the plaintiff herein in any amount even approaching $75,000.00 and,

therefore, there was never proper jurisdiction for this action with the Court to begin with and

this action should also be dismissed as violating 28 U.S.C. Section 1332(a)(1), since no proof

has been adduced to show that the amount in controversy exceeds $75,000.00, exclusive of

interest and costs.

Dated: New York, New York
September 28, 2010

PERRY BURKETT (PB-4936)